UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: MATTHEW SCOTT SOOS,                    No. 13-09-10557 MA

Debtor.

**ORDER ON CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**

THIS MATTER is before the Court on confirmation of Debtor's Chapter 13 Plan (Docket No. 3). Debtor is an above-median income debtor subject to the restrictions to confirmation contained in 11 U.S.C. § 1325(b)(3).[1] At issue is whether the Debtor may take a vehicle ownership deduction for a 2007 Honda Accord Coup EX ("Honda") purchased in June of 2007 that the Debtor now owns free and clear by virtue of an unsecured personal loan used, in part, to pay off the secured debt on the Honda. The Debtor filed an Amended Plan on April 2, 2009 (Docket No. 17). The notice of deadline for filing objections to the Amended Plan had not expired as of the final hearing date on confirmation of Debtor's Plan. Because the vehicle ownership expense deduction remains at issue in the Amended Plan, the Court will address that issue at this stage of the proceeding.

The Chapter 13 Trustee argues that the Debtor should not be allowed to take the vehicle

---

[1]That section provides, in relevant part:
> Amounts reasonably necessary to be expended under paragraph (2) ["disposable income" which must be contributed by the debtor over the plan term defined as current monthly income less reasonably necessary expenses], other than subparagraph (A)(ii) of paragraph (2) [charitable contributions], shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than --
> > (A)in the case of a debtor in a household of 1 person, the median family income of the applicable State for1 earner.

11 U.S.C. § 1325(b)(3).

1

ownership deduction and that such amount must be contributed to the plan to satisfy the disposable income requirement. The Debtor counters that the vehicle ownership expense is a standardized deduction that the Debtor is allowed to take regardless of whether the vehicle is encumbered. After consideration of the parties' arguments, the stipulated facts, and the applicable law, the Court finds that the Debtor is entitled to take the vehicle ownership expense in calculating his current monthly income.

FACTS

The parties stipulated to the following facts necessary to the determination of the issue before the Court:

1. Debtor purchased the Honda on or about June 30, 2007 for $24,012.80.

2. In July of 2007, Debtor financed 100% of the Honda's purchase price with a secured loan from Pennsylvania State Employee Credit Union.

3. In or about the last week in October of 2007, Bank of America extended a $52,518.00 unsecured personal loan credit line ("Loan") to the Debtor.

4. Debtor used a portion of the funds from the Loan to pay off the secured debt on the Honda.

5. Debtor filed a voluntary petition under Chapter13 of the Bankruptcy Code on February 18, 2009.

6. Debtor's schedules list an unsecured debt to Bank of America in the amount of $52,518.00.

7. Debtor's Schedule I reflects average monthly income in the amount of $2,830.00.

8. Debtor's Schedule J reflects average monthly expenses in the amount of $2,140.00.

2

In addition to the parties' stipulated facts, the Court makes the following findings of fact:

9. Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C) ("CMI Calculation") reflects a vehicle ownership expense deduction in the amount of $489.00 on line 28.

10. The monthly disposable income reflected on line 59 of the CMI Calculation is $206.72.

11. Debtor's Chapter 13 Plan proposes monthly payments of $207.00 for a period of sixty months.[2]

12. The Debtor's Schedule F lists unsecured debt in the total amount of $148,269.00, including the outstanding balance of the Loan in the amount of $52,518.00 and student loan debts totaling $59,163.00.

## DISCUSSION

In *In re Pearson,* 390 B.R. 706 (10th Cir. BAP 2008), a case decided by the Tenth Circuit Bankruptcy Appellate Panel ("BAP") but later vacated by the Tenth Circuit[3], the BAP concluded that above- median income Chapter 13 debtors were entitled to take the vehicle ownership expense deduction for their fully owned vehicle. The BAP reasoned that "applicable monthly

---

[2]Debtor filed an Amended Plan on April 2, 2009 (Docket No. 17). The notice of deadline for filing objections to the Amended Plan had not expired as of the final hearing date on confirmation of Debtor's Plan. The vehicle ownership expense deduction remains at issue in the Amended Plan.

[3]*In re Pearson,* 2009 WL 205408 (10th Cir. 2009)(dismissing the appeal as moot, vacating the BAP's decision, and remanding the matter to the BAP with instructions to vacate the bankruptcy court's ruling as to the vehicle-ownership-deduction issue and dismiss the BAP appeal); *In re Pearson,* 399 B.R. 829 (10th Cir. BAP 2009)(vacating bankruptcy court ruling and dismissing appeal).

3

expenses" under 11 U.S.C. § 707(b)(2)(A)(ii)(I)[4] does not mean "actual expenses." *Id.* at 714. Thus, under the "means test" calculation[5] used to determine disposable income available for payment to unsecured creditors for above-median income Chapter 13 debtors, the debtors could deduct the standard vehicle ownership expense as an "applicable monthly expense amount" even when they owned the vehicle free and clear of any lien. *Id.* This Court agrees with the reasoning of *Pearson.*

Application of *Pearson* to this case would allow the Debtor to take the vehicle ownership expense deduction as part of his CMI Calculation and make monthly plan payments of $207.00, resulting in minimal distribution to unsecured creditors under his Chapter 13 Plan. Because the vehicle ownership expense contained in the CMI Calculation is not an expense the Debtor is actually paying each month, funds in the amount of $489.00 represented by that line item expense would otherwise be available in Debtor's budget. The Debtor's Schedules I and J reflect an actual surplus of net monthly income over expenses in the amount of $690.00. The difference between his proposed plan payment and his actual budget is nearly identical to the amount of the vehicle ownership expense deduction on Line 28 of his CMI Calculation.

In this case, the Debtor obtained an unsecured loan and used it to pay off the secured debt

---

[4]That section provides, in relevant part:
> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . .
> 11 U.S.C. § 707(b)(2)(A)(ii).

[5]The "means test" is the calculation of a debtor's reasonably necessary expenses as defined under 11 U.S.C. § 707(b)(2), which, in turn, establishes the parameters under which a presumption of abuse arises in Chapter 7 cases. *See* 11 U.S.C. § 707(b)(2).

4

on the Honda, essentially converting secured debt into unsecured debt. Had he not done that, he would have an actual expense associated with the Honda, and correspondingly less disposable income to pay unsecured creditors, but the total amount of unsecured debt would also have been significantly less. Consequently, unsecured creditors would receive a greater dividend. By allowing the Debtor to take the vehicle ownership expense deduction and to contribute only $207.00 per month for the life of the plan the Debtor will receive a windfall: not only will he have excess monthly net income in his budget, at the end of the plan term he will discharge a substantial balance of the unsecured debt that enabled him to obtain his car free and clear of any security interest. The Chapter 13 Trustee urges the Court to use its discretion to address this unfairness and suggests that under these facts, the Debtor has failed to satisfy the separate good faith requirement under 11 U.S.C. § 1325(a)(3). While the Court agrees that the good faith requirement is an independent condition of confirmation[6], the Court cannot agree that the unfairness presented by these facts means that the Debtor has failed to propose his plan in good faith.

Section 1325(a)(3) provides that confirmation of a Debtor's Chapter 13 plan is contingent upon a finding that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). As noted by the bankruptcy court in *In re Owsley,* 384 B.R. 739, 750 (Bankr.N.D.Tex. 2008), "[i]t seems fundamentally inconsistent to characterize an expense amount as reasonably necessary in section 1325(b)(3), yet conclude under 1325(a)(3) that it is

---

[6]*In re Martin,* 373 B.R. 731, 736 (Banrk.D.Utah 2007)("Section 1325(a)(3), which requires that a plan is proposed in good faith, is distinct and independent from the requirements of § 1325(b) . . .")

5

bad faith for the debtor to claim it."[7] Courts evaluating the good faith requirement of 11 U.S.C. § 1325(a)(3) have consistently held that a finding of bad faith cannot be based *solely* on the fact that the debtor's plan proposes to pay only what is required under the Code, despite an apparent ability to pay more.[8]

This is not to say that compliance with the requirements under 11 U.S.C. § 1325(b)(3), by definition, satisfies the good faith requirement under 11 U.S.C. § 1325(a)(3).[9] As contemplated by the bankruptcy court in *Owsley,* this Court agrees that expenses taken in compliance with 11 U.S.C. § 1325(b) are presumed to be taken in good faith under 11 U.S.C. § 1325(a)(3), but that the "presumption of good faith can be negated by aggravating circumstances." *Owsley,* 384 B.R.

---

[7]*In re Smith,* 401 B.R. 469, 476 (Bankr.W.D.Wa. 2008)("Offering a Chapter 13 Plan that proposes to pay only what is required by the Code should logically not be a violation of good faith.").

[8]*See, e.g., Smith,* 401 B.R. at 477 (allowing debtors to take expense deductions for two homes and a vehicle they intended to surrender, reducing the debtors' disposable income required to be paid into the plan); *In re Turner,* 384 B.R. 537, 545 (Bankr.S.D.Ind. 2008)(stating that "the Court would be unwilling to find bad faith based solely on the fact that Debtor is not committing more to fund a plan than is otherwise required under 1325(b)(2)."); *In re Winokur,* 364 B.R. 204, 206 (Bankr.E.D.Va. 2007)(stating that "[i]f the sole objection to the debtor's good faith is that the debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement. He has done everything Congress has asked him to do."). *See also, In re Anderson,* 367 B.R. 727, 732 (Bankr.D.Kan. 2007)(reasoning that because the determination of "whether a debtor is committing sufficient income to a Chapter 13 Plan is determined by § 1325(b) . . . . the Court does not consider the debtor's ability to pay in determining good faith[.]")(citing *In re Barr,* 341 B.R. 181, 184 (Bankr.M.D.N.C. 2006)); *In re Mancl,* 381 B.R. 537, 542 (W.D.Wis. 2008) (stating that "the prevailing rule of law since the initial adoption of § 1325(b) in 1984 is that the sufficiency of resources committed to unsecured creditors is . . . no longer a consideration in good faith analysis under § 1325(a)(3).")(citations omitted).

[9]*See Martin,* 373 B.R. at 736 ("Simply because an item is an allowable expense on Form B22C does not shelter it from scrutiny under the Court's good faith analysis."). *See also Smith,* 401 B.R. at 477 (clarifying that "[t]he Court is not holding that a good faith analysis is no longer applicable to Chapter 13[ ]" but holding that "it is not bad faith to propose a Chapter 13 plan that commits the lease amount of income required by the Code.").

6

at 750. Factors relevant to the Court's consideration of good faith include "the timing of the bankruptcy petition, the debtors' motives in filing the petition, how the debtors' actions affected creditors, the debtor's treatment of creditors before and after the petition, and whether the debtors have been forthcoming with creditors and the court." *Id.* at 751 (citations omitted).[10] In this case, although the Debtor's actions benefitted the Debtor at the expense of his unsecured creditors, he has been forthcoming with creditors and the Court in connection with this bankruptcy proceeding. The actions the Chapter 13 Trustee complains of occurred more than a year before the filing of his bankruptcy petition. The Court cannot, therefore, conclude that his pre-petition actions were improperly calculated to manipulate the disposable income calculation mandated under the Code.[11] The Debtor is entitled to take the vehicle ownership expense deduction, and such deduction in itself is not evidence of a lack of good faith.

Because the Debtor filed an amended plan, IT IS HEREBY ORDERED that confirmation of Debtor's Chapter 13 Plan is DENIED.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket: May 6, 2009

---

[10]*See also Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983)(adopting a "totality of circumstances" test for considering whether a debtor's Chapter 13 plan meets the good faith requirement of 11 U.S.C. § 1325(a)(3)); *Martin,* 373 B.R. at 374 - 375 (applying "totality of circumstances" test for good faith to a Chapter 13 case filed subsequent to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005).

[11]*Cf. Mancl,* 381 B.R. at 542-543 (noting that "[i]t is conceivable that debtors might fail the good faith test if they engaged in pre-petition conduct for the purpose of manipulating the § 101(10A) [current monthly income] calculation.").

COPY TO:

William F. Davis
Attorney for Debtor
6709 Academy NE, Suite A
Albuquerque, NM 87109

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111

8